COLE, Clerk, *et al. v.* FOSTER *et al.*

No. 17205.  October 11, 1950.  Rehearing denied November 15, 1950.

*Phillips, Johnson & Williams,* for plaintiff in error.

*Bernard N. Nightingale,* for person at interest, not party.

*Eugene Cook* and *Frank H. Edwards,* contra.

ATKINSON, Presiding Justice. (After stating the foregoing facts.) ■ Cole insists that his motion to dismiss the petition should have been granted for the reason that, under the act, the board of commissioners did not have the right to require the payment of the money to be made to them, as the act requires that the money be paid to the treasurer of the board of commissioners.

In a suit for mandamus, the duty sought to be enforced must be one arising by law, either expressly or by necessary implication. The law must not only authorize the act, but must require it. *Sibley* v. *Park,* 175 *Ga.* 846 (166 S. E. 212); *Johnson* v. *Arnold,* 176 *Ga.* 910 (169 S. E. 505); *Wood* v. *Puritan Chemical Co.,* 178 *Ga.* 229 (172 S. E. 557). Those demanding that a public officer pay out public money must show a clear provision of law which entitles them to receive it. *Freeney* v. *Geoghegan,* 177 *Ga.* 142 (169 S. E. 882); *Civil Service Board of Fulton County* v. *MacNeill,* 201 *Ga.* 643 (40 S. E. 2d, 655).

Whether or not the board has a right to require that these funds be paid to them must be determined from the provisions of the act. In its caption it states "To provide for a commission to receive and disburse such funds." Section 3 creates the office of secretary-treasurer, to be appointed by the board and to have such powers as may be given him by the board, and to perform such services as the board may direct. Section 4 provides that the board "shall have . . control of the funds. . ." Section 5 states it is the power and duty of the board, "to provide for the collection of all money provided in this act, . . and all other powers necessary for the proper administration of the provisions of this act." The provision relied upon by Cole is found in section 10, which, after designating the source from which the funds are derived, requires that " . . the sum of $1 for each case so disposed of shall be paid to the Treasurer of the Board. . ." There are other provisions of the act which relate generally to the collection and disbursement of this fund.

In construing the act as a whole, it is clear that it was the legislative intent to give to the board the control of the funds and place upon them the duty to provide for the collection of all money due them under the terms of the act. The secretary-treasurer could in this instance act only for and in behalf of the board. A written demand for the payment, prior to the institution of the proceedings, was made by Francis W. Allen, treasurer of the board. Upon failure to comply with this demand, the board, who were directed under the terms of the act "to provide for the collection of all money" due them, had the right to require, by mandamus, that Cole pay the money to them.

■ Under paragraph 10, subheads a, b, c, d, e, and f of Cole's answer, various sections of the act (Ga. L. 1950, p. 50) are attacked as being in violation of specified provisions of the State Constitution. Each of the attacks is predicated on the proposition that the act seeks to confer corporate powers on the board to operate and conduct an insurance business. From a perusal of the various terms of this act, we find nothing that would authorize this court to determine that it seeks to confer any such powers on the board.

■ Under paragraph 10 g of the answer, it is asserted that section 10 of the act violates article 7, section 2, paragraph 1, of the State Constitution (Code, Ann., § 2-5501), in that it seeks to impose a tax not authorized by the Constitution; also that section 10 of the act violates article 7, section 5, paragraph 1, of the State Constitution (Code, Ann., § 2-5801), prohibiting the General Assembly from authorizing a city to appropriate money except for purely charitable purposes. Section 10 of the act provides that, where a fine of $5 or more is collected, or where a bond is forfeited, the sum of $1 shall be paid into this fund by the person or authorities collecting the same. It is insisted that this is an occupation tax on the clerk or person collecting it. To so construe the act would be giving the legislative intent a wholly unreasonable construction, and would lead to unjust, unreasonable and absurd results. It is clear that the General Assembly intended the $1 to come from the fine or forfeiture, and not from the funds of the clerk or other person who actually collects the fine or forfeiture.

(a) We do not construe the $1 to be a tax. Fines and bond

forfeitures and the disposition thereof are proper subject-matters of legislation. And an act allocating a portion of a fine or forfeiture is neither in violation of article 7, section 2, paragraph 1 of the Constitution (Code, Ann., § 2-5501), as seeking to impose an unauthorized tax, nor violative of article 7, section 5, paragraph 1 (Code, Ann., § 2-5801), as being an appropriation of money.

■ Under paragraph 10 i, j, k, and l, further attacks upon the act are made. Attacks under j, k, and l, are covered by the third division of this opinion. Under subhead i it is asserted that the act is in violation of subparagraph 1, of paragraph 2, article 7, section 1 of the State Constitution (Code, Ann., § 2-5402), which provides that "The General Assembly shall not by vote, resolution or order, grant any donation or gratuity in favor of any person, corporation or association"; and also violates subparagraph 2 of paragraph 2, article 7, section 1, of the State Constitution (Code, Ann., § 2-5402), which provides that "the General Assembly shall not grant or authorize extra compensation to any public officer, . . after the service has been rendered. . ." It is asserted that these constitutional provisions are violated because the act, in determining the amount of benefits due by reason of length of service, does not fix the beginning of the service at the date of the act, but from the time the officer actually entered upon his duties, thus permitting the officer to get credit for services rendered prior to the date of the act. The position is taken that this violates the above constitutional provisions, in that it is not adjusted compensation for services rendered, but gives gratuities and extra compensation for the period of time between the beginning of their services and the date of the act.

The provisions of section 9 of the act, requiring that peace officers pay a defined monthly sum into the fund, create a contractual relation, and the disability and retirement pay provided therein is not a gratuity but is adjusted compensation for services rendered. *Trotzier* v. *McElroy*, 182 *Ga.* 719 (186 S. E. 817). Nor do the provisions of the act—in computing the amounts of benefits by length of service, and permitting credit for service rendered prior to the date of the act—create compensation to a public officer after the service has been rendered. It is

insisted that, in computing the years of service, its beginning point cannot go behind the date of the act, and in support of this contention the case of *DeWitt* v. *Richmond County,* 192 *Ga.* 770 (1) (16 S. E. 2d, 579), is cited. That case does not so hold, but merely holds that the act there under review so provided. Under an act of this kind, giving credit for service prior to its passage is not compensation after the service has been rendered. 19 R.C.L. 726, § 33; 40 Am. Jur. 984, § 26; 62 C.J.S. 1200, 1264, 1280, §§ 588 (g), 614 (d) & (g).

■ Under paragraph 10 (m) of the answer, the act is attacked as being in violation of article 1, section 1, paragraph 1, of the State Constitution (Code, Ann., § 2-101), which declares that government is instituted for the good of the whole, and article 1, section 1, paragraph 2 of the State Constitution (Code, Ann., § 2-102), which declares that protection to person and property is the paramount duty of government, for that the public interest is affected, in that prosecutions will be instituted for the sole purpose of building up this fund. There is no merit in this contention for the reason that public officers are presumed to do their duty.

■ By paragraph 10 (n) of the answer it is alleged that the act as a whole is null and void, for the reason that it is too vague and uncertain with respect to the time when it becomes operative as to the payment of benefits and annuities. Section 17 of the act provides: "The provisions for benefits and annuities herein contained shall not become operative until after the funds necessary to carry out the provisions of this act shall have been provided." It is clear that this act took effect on the date of its approval. Deferring the payment of benefits and annuities until the necessary fund from which said payments were to be made had been accumulated from the sources specified, does not make the act too vague and uncertain to be enforceable. This becomes a matter of administering the act in accordance with its terms.

Other attacks upon the act are covered by rulings made above.

It was therefore not error for the trial judge to overrule the motion to dismiss the petition, nor to grant a mandamus absolute.

*Judgment affirmed. All the Justices concur.*