46129.   KITCHENS v. ATLANTIC STEEL COMPANY.

ARGUED APRIL 7, 1971—DECIDED APRIL 30, 1971—
REHEARING DENIED MAY 24, 1971—CERT. APPLIED FOR.

*William L. Horton,* for appellant.
*Jones, Bird & Howell, C. Dale Harmon,* for appellee.

EVANS, Judge. Tommy L. Kitchens was employed by Atlantic Steel Company under the terms of a collective bargaining contract negotiated by a union for the benefit of all employees and the employer. After Kitchens had worked for this company for 22 years, he was discharged, and thereafter he applied for pension benefits as provided for in the written contract of employment. The trial court, on a stipulated statement of facts, decided in favor of the employer, and the employee appeals to this court.

The specific provision of the employment contract which Kitchens contends applied to his situation is the following language therein, to wit: "Any employee who shall have had at least fifteen but less than thirty years continuous employment and who shall have attained the age of sixty shall be eligible to retire at his sole option, and shall upon his retirement be entitled to receive a special retirement payment as provided in Section 7 and to elect as provided in Section 6 (d) either:

"(i) a deferred monthly amount with right to payment commencing after attainment of age sixty-five; or

"(ii) an immediate reduced monthly amount." Early Retirement Plan, Section 4 (a) (1).

There was ample evidence in the record to show the employee, when discharged, had attained the age of more than 61 years. However, the lower court made no finding on the question of age, and this is a matter which cannot be passed on here, but must be passed on by the trial court.

But the employer contends the employee forfeited his right to pension by being discharged before applying for pension benefits. In other words, the employer contends that it had the right not only to discharge the employee from his job, but to impose upon him an additional penalty of rubbing out pension benefits to which he had become entitled through working for the company for 22 years; and that in one fell swoop it could seize upon an act

of misconduct by the employee and effect both his discharge and pension-forfeiture.

If such right inheres in the employer, it must be plainly stated in the written contract; it must be "so nominated in the bond."

The written contract defines the term "employee" and the term "pensioner" as follows: "(d) The term 'employee' means a person who is an active, fulltime employee of the company within said Bargaining Unit; (e) The term 'pensioner' means an employee who shall have become, or shall be, eligible for and entitled to a pension under the provisions of this Pension Plan."

The employer's brief asserts: "This is an optional plan and must be elected by an employee *in good standing who meets the time of service requirements.*"

The written contract in this case is contained in "Agreement"; "Pension Plan" and "Collectively Bargained Contract." There is not a word in the contract which states that such election must be by an employee "in good standing."

The contract nowhere spells out any provision for forfeiture of pension rights. To the contrary, time and again it provides for penalties to be imposed by the employer and the greatest penalty specified is discharge. For instance, the contract provides "It is understood that any employee who shall participate in any work stoppage while this contract is in effect *will be discharged* or otherwise disciplined." Again, on excessive absenteeism, it is provided that for the third offense the "employee be discharged."

And on the same page three unexcused absences "shall be cause for discharge." It is highly significant that the disciplinary rights of the employer are not shown to include the right to forfeit pension. The employer quotes from the contract as follows: *"Termination of Seniority.* Continuous employment will be broken, and *all rights based upon seniority* will be terminated: (a) when an employee quits or resigns; or (b) when an employee shall be discharged in accordance with the provisions of Section 2.6 'Absenteeism' or Article 8 'Suspension and Discharge' of this contract; . . ." (Emphasis supplied.)

The employer argues that as the quoted language authorizes the termination of all seniority rights if the employee is discharged, and as pension rights are fringe benefits arising under seniority

rights, by implication, the discharge of an employee forfeits that employee's right to pension benefits. But this position is not tenable, because the written contract itself defines seniority rights, as follows: "Article VI. Seniority. Section 6.1. Purpose. The purpose of this Article VI is to define the relative seniority rights of employees in connection with promotions, demotions, transfers, certain absences, reduction of forces, or increases in forces. Such rights shall be uniformly determined and applied throughout the plant. *This Article, as amended in the manner hereinbefore or hereinafter specified, constitutes the entire agreement between the parties with respect to seniority.*" (Emphasis supplied.) Thus "seniority" does not deal with pension rights whatever.

Under the definition of "Pensioner" the employee in this case was a "Pensioner" on the day before he was discharged in that he had become eligible for and entitled to a pension, subject only to the condition that he apply for same. This is because he was more than 60 years of age and had worked more than 15 years. Thus, when he was discharged, the employer was discharging a "pensioner."

Should we apply the rule contended for by the employer, then it could defeat pension rights of any employee simply by finding just cause for and discharging that person.

Consider the case of an employee who has worked for more than 15 years and has attained more than 60 years of age, and who is suddenly paralyzed or suffers a disabling heart attack, and is carried home, unable to work any more. Under the employer's contentions, he would not be entitled to a pension because only an employee can apply for a pension and "employee" means a person who is an *active, full-time employee of the company*. Surely that is not what the contract in this case means.

The employer's contention is that the employee *forfeited* his pension rights. Forfeitures are not favored by law in the State of Georgia. See *Jones v. Pacific Mutual Ins. Co.*, 57 Ga. App. 16, 23 (194 SE 249).

Equity seeks to relieve against forfeitures. See *Code* § 37-216.

In *Churches Homes v. Manget Foundation*, 110 Ga. App. 539, 544 (139 SE2d 138), this court stated: "We are aware of the well settled rule of construction with respect to deeds that conditions

which tend to destroy an estate are not favored in law and that such conditions must be strictly construed against forfeiture."

In *Fulford v. Fulford,* 225 Ga. 9, 12 (165 SE2d 848) it was sought to have an estate declared "on condition" (thus forfeiting a part of the estate) and the Supreme Court held this could not be done: ". . . unless the language used by *express terms* creates an estate on condition, or unless the intent of the grantor to create a conditional estate is manifest from a *reading of the entire instrument. . . Where there are no express words of . . . forfeiture* or reversion, the words in the deed will be construed as words of covenant and not words of condition." (Emphasis supplied.) To the same effect is the holding in *Jones v. Reid,* 184 Ga. 764 (1) (193 SE 235).

The parties in this case entered into a written contract respecting the employment, wherein 112 pages of small printed type were used and not one single time was it ever provided that pension rights could or would be forfeited under any circumstances whatever. We must assume, therefore, that the parties did not intend that the contract should provide for forfeiture of pension rights, else it would have been "so nominated in the bond" and such an important matter would not have been left to mere implication.

No pertinent law or applicable decision is cited which would require a contrary decision. We will not read into the contract forfeiture where none appears.

Accordingly, the judgment of the court which held that, inasmuch as plaintiff was not an employee at the time he applied he could not obtain benefits, should be reversed with direction that the trial court conduct a hearing to determine the age of the employee at the time of termination of his employment.

*Judgment reversed with direction. Jordan, P. J., and Quillian, J., concur.*