## 26657. ATLANTIC STEEL COMPANY v. KITCHENS.

ARGUED SEPTEMBER 15, 1971—DECIDED FEBRUARY 2, 1972— REHEARING DENIED MARCH 9, 1972.

*Jones, Bird & Howell, C. Dale Harman, Earle B. May, Jr.,* for appellant.

*William L. Horton,* for appellee.

MOBLEY, Presiding Justice. In *Kitchens v. Atlantic Steel Co.,* 123 Ga. App. 812 (182 SE2d 530), the Court of Appeals found that Kitchens was entitled to a pension under a collective bargaining contract between Atlantic Steel Company and the United Steel Workers of America. This court granted certiorari to review the decision.

Kitchens was discharged from his employment by Atlantic Steel for insubordination, and the cause for his dismissal was upheld by union-management arbitration.

Subsequently he applied for an "Early Retirement" pension, contending that at the time of his dismissal he was 60 years of age and had worked for the company for 22 years, and that his pension right had vested under the contract.

The Court of Appeals held that Kitchens could not be deprived of his pension rights by being discharged before applying for the pension benefits. The factual question of Kitchens' age at the time of his discharge was not decided in the trial court, and that question was left for determination in the trial court.

■ No question appears to have been made by the parties, or decided by the court, in either the trial court or the Court of Appeals, as to the jurisdiction of the State courts in this matter involving a collective bargaining contract made pursuant to the National Labor Relations Act. We consider it necessary to first determine this question, since State courts should not take jurisdiction of the action if jurisdiction is exclusively within the National Labor Relations Board.

We confess difficulty in determining those cases in which jurisdiction is pre-empted by the National Labor Relations Board. However, the Supreme Court of the United States has indicated that there is an area in which State courts have a right to enforce collective bargaining contracts. See Dowd Box Co. v. Courtney, 368 U. S. 502 (82 SC 519, 7 LE2d 483); Teamsters Local 174 v. Lucas Flour Co., 369 U. S. 95 (82 SC 571, 7 LE2d 593); Humphrey v. Moore, 375 U. S. 335, 344 (84 SC 363, 11 LE2d 370).

The record in the present case shows two collectively bargained contracts between Atlantic Steel and the Union. The contract dated November 30, 1965, deals with rates of pay, vacations, seniority, suspension and discharge, severance allowance, and other conditions of employment. The contract dated December 31, 1965, is a pension agreement. The pension contract makes reference to the contract for rates of pay, etc., but states that the pension contract is not a part of that contract, and "shall be treated as a separate agreement by and between and binding upon the parties

hereto as hereinabove and in such Pension Plan stated and provided."

The contract dealing with rates of pay, etc., made "in accordance with and subject to the limitations and provisions of the National Labor Relations Act, as heretofore amended," recognizes the Union as the sole and exclusive agent and representative of the employees "for the purposes of collective bargaining with respect to rates of pay, wages, hours of work and other conditions of employment." An Article on Grievances is included in the contract which provides for Grievance Committees and a procedure for handling and adjusting grievances. If no mutually satisfactory disposition of a grievance can be reached by Atlantic Steel and the Union, a procedure is provided for final and binding arbitration of the grievance. A grievance in defined as "any dispute or disagreement which may arise with respect to the application or performance of this contract or any part hereof," and it is stated that other disputes shall not be submitted to arbitration or handled as a grievance.

The pension contract has no provision for arbitration of disputes arising under it. As to disagreements it states: "Each application for a pension shall be made in writing and shall include such information as the company shall reasonably require. Representatives designated by the company and the union shall, through the proper processes of collective bargaining, endeavor in mutual good faith to resolve any disagreement as to the rights of any applicant for a pension hereunder." No method of resolving disagreements is provided if this endeavor fails.

This is not a case, therefore, which would be controlled by Republic Steel Corp. v. Maddox, 379 U. S. 650 (85 SC 614, 13 LE2d 580), in which it was held that contract grievance procedures must be exhausted before direct legal redress is sought.

In the recent decision of the United States Supreme Court in Chemical Workers v. Pittsburgh Glass, decided December 8, 1971, it was held that retirees' benefits are not a mandatory subject of collective bargaining under the Na-

tional Labor Relations Act (29 USCA § 151 et seq.), since the statute establishes the obligation of the employer to bargain collectively only "with respect to wages, hours, and other terms and conditions of employment," with "the representatives of his employees," and retirement benefits of persons already retired do not come within this obligation.

In the present case the contract dispute arises under a contract which does not provide any method of arbitration. No management-union decision was invoked on the question, and the denial of the pension by Atlantic Steel was under its interpretation of the pension contract. Since the dispute is in an area of labor relations which is not a mandatory subject of collective bargaining, we conclude that the State courts have jurisdiction to decide the dispute.

■ There is no disagreement between the parties as to the fact that Kitchens was discharged for cause, and that the decision of the arbitrator denying the grievance complaint filed by the Union on behalf of Kitchens was final and binding on all the parties. This decision by the arbitrator dealt with a matter covered under the contract of November 30, 1965, dealing with rates of pay and other conditions of employment.

The subsequent application of Kitchens to Atlantic Steel for an early retirement pension presented a new question, whether under the terms of the pension contract of December 31, 1965, he was entitled to a pension even though he had been discharged.

The Court of Appeals held that the pension contract had no express provision whereby an employee forfeited his pension rights because of being discharged; that forfeitures are not favored by law, and that the pension right had vested in Kitchens at the time he was discharged.

The pension contract provides in Section 4: "Any employee who shall have had at least fifteen but less than thirty years continuous employment and who shall have attained the age of sixty shall be eligible to retire at his sole option, and shall be entitled to receive a special retirement payment as provided in Section 7 ..." Kitchens

claims to be eligible for pension under this section.

Atlantic Steel contends that because Kitchens was not "an active, full-time employee of the company," as the term "employee" is defined in the pension contract, at the time he applied for a pension, he would not be eligible for retirement benefits.

It is plain that the definition given of "employee" can not apply in each instance where the word is used in the contract. For instance, Section 3 providing for disability retirements, refers to "any employee who while this Pension Plan is in effect, shall become totally and permanently disabled for six consecutive calendar months, . . ." An employee disabled for six months could not be "an active, full-time" employee. Section 5, providing for deferred vested pensions, refers to any "employee" whose employment shall be terminated because of a reduction of working forces, etc., who has been in continuous employment of the company for at least 15 years, and has attained the age of 40 years at that time, and states that the "employee" shall make application for a pension not sooner than 90 days prior to his 65th birthday. Such an "employee" would not be an active, full-time employee at the time of his application for pension.

Atlantic Steel points out that the pension contract in Section 12 states: "This Pension Plan is applicable only to employees who shall retire or, as hereinabove provided, shall be deemed to have retired on or after December 31, 1965, and while this Pension Plan is in effect." This paragraph must be construed with the heading of the section, which is, "Effective Date and Termination," and the paragraph preceding the quoted paragraph, which states the effective date of the pension plan. The quoted paragraph deals only with the effective dates of the pension contract, and does not purport to deal with the eligibility of individuals for benefits under the contract.

Atlantic Steel relies on Section 11 of the pension contract, which provides: "The company will pay the pensions provided for herein, or cause the same to be paid, without contribution from the employees or the union, and the com-

pany therefore has and shall have the sole right to determine whether and how said Pension Plan shall be funded and how said Pension Plan shall be administered."

The fact that the employee makes no contribution to the pension fund does not make the pension a gratuity which the employer can withhold at will. A pension is adjusted compensation for services rendered. *Cole v. Foster,* 207 Ga. 416, 420 (61 SE2d 814). Section 11 does not give the employer an arbitrary right to decide who shall receive pensions. The pension rights are carefully defined in the contract.

There is no language in the contract which requires that an employee must be in good standing at the time he applies for a pension. The cases from other jurisdictions cited by Atlantic Steel construe pension contracts containing language requiring that an employee be in good standing at the time he applies for a pension.

If Kitchens had applied for a pension on the day before his discharge, and was 60 years of age at that time, he would have been entitled to one. With no language in the contract providing to the contrary, he is eligible for such pension even though he was discharged. We decline to follow the cases of *Smith v. Bd. of Trustees &c.,* 173 Ga. 437 (160 SE 395); *Carlton v. West,* 174 Ga. 394 (163 SE 176); *Holcomb v. Smith,* 175 Ga. 566 (165 SE 581); and *Hooten v. Holcomb,* 177 Ga. 561 (170 SE 803), which are not full-bench decisions.

The Court of Appeals correctly held that Kitchens was eligible for an early retirement pension if he was 60 years of age at the time his employment was terminated.

*Judgment affirmed. All the Justices concur, except Almand, C. J., and Hawes, J., who dissent from Division 2 of the opinion and from the judgment.*

HAWES, Justice, dissenting. The original opinion circulated in this case merely affirmed the Court of Appeals opinion (123 Ga. App. 812) as correct. In my original dissent, I felt, and so stated, that the opinion and judgment, by agreeing with the Court of Appeals, was no more than a

holding that the certiorari was improvidently granted. I reasoned .that such a holding was repugnant to the legal questions raised by the certiorari. That opinion was recalled. In my original dissent, I did not raise any question as to the jurisdiction of the Georgia courts over this case. After the original opinion was withdrawn, the court propounded three questions to the attorneys on both sides as follows:

1. Does the State court have jurisdiction of this case, or are the questions in issue covered by the National Labor Relations Act and within the exclusive jurisdiction of the National Labor Relations Board?

2. Assuming that adjudication of the issue of whether the employee was guilty of insubordination and subject to dismissal from his job is within the jurisdiction of the N. L. R. B., is the question of whether he is entitled to a pension a question for decision by the N. L. R. B., or by the courts of this State, or, expressed another way,

3. Does the collective bargaining agreement entered into by Atlantic Steel Company and the Union, who represented this employee, control only as to the question of dismissal of the employee, or does it also control as to the contract between the company and the employee as to payment of pension?

Only the attorney for Atlantic Steel Company responded. He approached each question separately, and, I thought, answered them convincingly and should have brought about a different result and finding from the last opinion reached. The attorney for Atlantic Steel Company relied on a number of authorities; for example, he relied on and cited in his brief with explanations: Dowd Box Company v. Courtney, 368 U. S. 502, supra; Teamsters Local v. Lucas Flour Co., 369 U. S. 95 supra; Humphrey v. Moore, 375 U. S. 335, 344, supra. However, the court, in its second opinion, has misconstrued and misinterpreted these decisions to the detriment of his client, Atlantic Steel Company.

These cases deal with "unfair labor practices" and were brought in the proper jurisdiction. My position, as far as

jurisdiction is concerned, in this case, is plain and simply that the pension agreement in question is a collective bargaining agreement signed by the same officers as those who signed the collective bargaining contract between the company and the union relating to wages, hours and *conditions of employment*. Both the pension agreement and the collective bargaining contract were witnessed and approved by the same members of the bargaining committee, Local No. 2401. The pension agreement incorporates, by specific reference thereto, the terms of the collective bargaining contract. The pension agreement and bargaining contract, though separate documents, are considered by management and labor who negotiated both as a "package deal," and, being a "package deal," must be and are always construed together. Disputes arising between an employer and an employee over the right to receive pensions are grievances, subject if necessary to be arbitrated as part of the conditions of employment and the subject matter for collective bargaining under the National Labor Relations Act. "The statute [National Labor Relations Act] requiring an employer to bargain collectively with representatives of his employees in respect to rates of *pay, wages* and conditions of employment includes *retirement* and *pension plans*." (Emphasis supplied) See Inland Steel Co. v. National Labor Relations Board, 170 F2d 247; also Allied Chemical &c. Workers v. Pittsburgh Plate Glass Co., 404 U. S. (decided 12-8-71).

I take the further position that, in the absence of clear language in the pension or bargaining agreement, making provisions for pension rights of employees discharged for cause, such discharged employee forfeits any right he might have had at the point of discharge, subject, of course, to the arbitration proceedings wherein the validity of the discharge is questioned. I find no such language in either the pension agreement or the collective bargaining contract. In the case before us, the discharge was questioned and upheld in arbitration proceedings. The law clearly pre-empts the jurisdiction of the courts after arbitration, except in cases

of fraud, bad faith or collusion. Hildreth v. Union News Co., 315 F2d 548. It is presumed that all of Kitchens' rights were adjudicated in the arbitration proceeding, and the decision therein is final and binding. If they were not, it was incumbent upon Kitchens to exhaust his grievances in the proper forum. Republic Steel Corp. v. Maddox, 379 U. S. 650, supra. My position with respect to the jurisdictional question is fortified by the fact that I do not find, nor have the parties cited to this court, any Georgia case dealing with disputes as to rights arising under collective bargaining agreements that has been decided since the passage of the National Labor Relations Act.

However, assuming for the sake of argument, but not agreeing, that the Georgia courts have jurisdiction, under both Georgia and Federal law, the rights of the plaintiff in this case were properly adjudicated in the trial court. In order to be eligible for a pension under the pension plan, an employee must have had 15 years' service with the defendant and have reached the age of 60 years. The plaintiff, as set forth in the opinion of the Court of Appeals, had worked for the defendant 22 years. An issue of fact as to plaintiff's correct age was raised by the evidence, but the trial court in the judgment appealed from did not reach that question but decided "in favor of the defendant on the issue of law, namely, that the plaintiff was not an employee and was not thereby eligible to apply for a pension." In so holding, I think the trial court was correct.

Plaintiff was discharged on November 13, 1967, on the grounds of "insubordination." At the time of his discharge, he was a member of the "bargaining unit" as defined in the collective bargaining agreement and, by virtue of his being a member thereof, his rights vis-a-vis the employer were to be determined in accordance with the procedures set forth in that contract. The union filed a grievance complaint against the employer on account of the plaintiff's discharge and this was carried to arbitration, the final stage of the 4-step grievance procedure as set forth in the contract. The arbitrator's award denied the complaint, holding that

the employer did not violate the labor agreement in discharging Mr. Kitchens. That award was rendered on April 11, 1968. Plaintiff acquiesced in that decision and did not formally present to the employer his claim for a pension until January 28, 1969, more than 14½ months after his discharge and more than 9½ months after the final award of the arbitrator.

The opinion of the Court of Appeals and the majority of this court utterly ignore the basic and fundamental principle that whatever rights the plaintiff in this case has, insofar as his relations with his employer, or former employer, are concerned, are controlled by the collective bargaining agreement entered into between the company and the union, as his *sole* and *exclusive* bargaining agent, and the assertion of such rights is governed by applicable rules of substantive Federal law. Atkinson v. Sinclair Refining Co., 370 U. S. 238 (82 SC 1318, 8 LE2d 462); Humphrey v. Moore, 375 U. S. 335, 344, supra.

The legality of the discharge of Mr. Kitchens having been upheld by the arbitrator, he was no longer an employee and he had no rights under the pension agreement. This is so because Sec. 1 (d) of the 1966 Pension Agreement defines "Employee" as "A person who is an active, full-time employee of the company within said bargaining unit"; and, Sec. 1 (e) defines "Pensioner" as "An employee who shall be eligible for and entitled to a pension under the provisions of the pension plan." It will thus be seen that at the time Mr. Kitchens applied for a pension he was neither an employee nor a pensioner, since he had been discharged and his discharge was upheld by the arbitrator. See *Smith v. Board of Trustees for Relief &c.* 173 Ga. 437 (160 SE 395), and *Carlton v. West,* 174 Ga. 394 (163 SE 176), the only Georgia cases on this point. Therefore, he was not eligible to receive a pension, regardless of what his age might have been, and it is immaterial that he may have tried to inject into the case an issue as to his age. See Reeves v. Tarvisian, 351 F2d 889; Piper v. Meco, Inc., 412 F2d 752, where the U. S. Court of Appeals (1st Circuit) held, in effect, that

a terminated employee was not entitled to recover under a pension plan where the employee had submitted the question of the propriety of his termination to arbitration and where the board of arbitration had ruled that the employee had been terminated for cause. See, also, United Steel Workers v. Enterprise Wheel &c. Corp., 363 U. S. 593 (80 SC 1358, 4 LE2d 1424).

The Court of Appeals injects into the case for the first time issues respecting forfeiture. A forfeiture is not involved in this case. The pension agreement was a mere gratuity to the employees. The company paid the entire cost of the pension, the employees making no contribution whatsoever to the fund, and the administration of the pension fund under the terms of the agreement is vested solely in the employer. The plaintiff, therefore, acquired no vested interest in the pension and had nothing which he could forfeit. *Smith v. Board of Trustees for Relief &c.,* supra; *Carlton v. West,* supra; *Hooten v. Holcomb,* 177 Ga. 561 (170 SE 803).

On motion for rehearing, the applicant in certiorari called the court's attention to the fact that the majority had cited no Georgia law in support of its position, while he had cited four Georgia cases in point, being the same cases cited immediately above herein. With that observation before it, the majority again recalled its opinion to add: "We decline to follow the cases of [citing the four cases] which are not full-bench decisions." With these added words, the majority has shown its disregard for the stability of the law and established precedents so sorely needed in these times. How confusing it must be to the Bar for these established precedents to be thus lightly brushed aside.

For all of the foregoing reasons, I dissent from the opinion and judgment of this court. I would reverse the judgment of the Court of Appeals and would affirm the trial court.

I am authorized to state that Chief Justice Almand concurs in this dissent.