**FANTASTIC FAKES, INC.,**
**Plaintiff-Appellant,**

v.

**PICKWICK INTERNATIONAL, INC.,**
**Defendant-Appellee.**

No. 80-7294.

United States Court of Appeals,
Fifth Circuit.*
Unit B

Nov. 16, 1981.

---

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Gort, Rabiner, Joffe & Joffe, Craig J. Rabiner, Atlanta, Ga., for plaintiff-appellant.

Herbert D. Shellhouse, Robert L. Pennington, Atlanta, Ga., for defendant-appellee.

Before MORGAN, TJOFLAT and ANDERSON, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

This appeal presents dual questions of contract interpretation and the proper application of the 1909 and 1976 Copyright Acts.[1] The underlying controversy stems from the breach of a licensing agreement under which plaintiff, as copyright owner, authorized the distribution of certain of its copyrighted material by defendant. As a basis for two counts in its complaint, plaintiff asserts that defendant's failure to affix proper copyright notice to the licensed material—specifically defendant's representation of itself as copyright proprietor in the copyright notice—was a breach of a condition to the contract rendering defendant's actions unauthorized and therefore those of an infringer. Granting defendant's motion for summary judgment, the court below held that defendant's negligent designation of itself as copyright owner did not make it an infringer subject to claims under either copyright act. For the reasons stated below, we affirm.

## I. FACTUAL BACKGROUND

Plaintiff-appellant, Fantastic Fakes, Inc., [hereinafter "Fantastic"], is in the business of producing "soundalikes," rerecordings of "hit singles," which are then sold or licensed to distributors. Defendant-appellee, Pickwick International, Inc., [hereinafter "Pickwick"], is a worldwide record distribution company. On April 27, 1976, Fantastic entered into a two-year, non-exclusive "Licensing Agreement" with Pickwick. The agreement, which was drafted by Fantastic, granted Pickwick the right to distribute copies produced from master sound recordings made and copyrighted by Fantastic. Of particular importance to this appeal is section 2 of the licensing agreement which provides in relevant part

2. *Grant of Rights.* "LICENSOR" hereby grants to "LICENSEE" a non-transferable, nonassignable and nonexclusive License for a period of 2(TWO) years from the date hereof, to use the "ORIGINAL MASTER RECORDINGS" listed and identified on the schedule incorporated by reference herewith, and subject to and in accordance with the following:

(a) This License Agreement affords only to "LICENSEE" the rights embodied herein including the right to make sound recordings, including cartridge tapes, which are to be sold and distribut-

[1.] In the case at bar we are required to consider provisions of both the 1976 Copyright Act, 17 U.S.C. § 101 *et seq.* (1979) and the 1909 Copyright Act, ch. 320, 35 Stat. 1075 (codified and reenacted as positive law in 1947, Pub.L. 94–553). The new Act was adopted on October 19, 1976, but all provisions relevant to this appeal did not become effective until January 1, 1978. The 1976 Act does not extend copyright protection to any work that went into the public domain prior to the Act's effective date. H.R. Rep. No. 94–1476, 94th Cong., 2d Sess. *reprinted in* [1976] U.S.Code Cong. & Ad.News 5659, 5796 (Transitional and Supplementary Provisions, section 103). Similarly, the 1909 Act continues to govern infringement lawsuits, if relating to pre-1978 infringement. *Id.* (Transitional and Supplementary Provisions, section 112). The occurrences leading to the instant suit began in April 1976 and continued at least through August 1978. The record demonstrates that alleged acts of infringement first occurred in 1977. The 1909 Act is, therefore, controlling as to most of the issues before us, but as to any alleged continuing infringement, we will also be required to consider the provisions of the 1976 Act. Important distinctions between the new and old Copyright Acts will be discussed as they relate to the particular issues raised.

ed to the public, and said "ORIGINAL MASTER RECORDINGS" or derivatives therefrom shall not be sold, distributed, assigned, licensed or sublicensed by "LICENSEE" so that other sound recordings may be made therefrom by anyone other than "LICENSEE" or so that anyone other than "LICENSEE" may exercise any of the rights embodied herein.

(b) "LICENSEE" shall cause to appear on all sound recordings, including cartridge tapes, produced from "ORIGINAL MASTER RECORDINGS" a copyright notice such that said notice appears on the surface of the copies of the recording or on the label or container, in such a manner and location as to give reasonable notice of the claim of copyright. The copyright notice for said sound recordings, including cartridge tapes, shall be in the name of "LICENSOR" who is copyright owner, and shall be in the following form:

"P 1973 (or year first registered) by "FANTASTIC–F, INC."

Additionally, section 9 of the agreement sets forth a choice of law provision requiring that the contract be "construed and enforced in accordance with the laws of the State of Georgia."

Pursuant to the licensing agreement Fantastic sent Pickwick numerous "master recordings." Pickwick in turn made recording "derivatives", copies of which were included in Pickwick's catalogs and sold to the public as part of its regular inventory. Appearing on all such copies of Fantastic's copyrighted material was the following copyright notice

P-Pickwick International, Inc. WARNING: Unauthorized reproduction of this recording is prohibited by federal law and subject to criminal prosecution.

In October 1977, some of the phonorecords bearing the incorrect copyright notice were discovered by Fantastic in Atlanta area retail stores. Approximately ten months later, in August 1978, Fantastic filed the instant action in the District Court for the Northern District of Georgia. Fantastic's amended complaint contained six counts

upon which were based claims for injunctive relief and damages. In issue on this appeal are only Counts I and III in which Fantastic alleged that Pickwick's failure to affix the proper notice of copyright to products distributed under the licensing agreement constituted an infringement of copyright.

After lengthy discovery proceedings Pickwick filed a motion for partial summary judgment on five counts of Fantastic's complaint including Counts I and III. The motion was granted by the trial court on February 20, 1980, and final judgment was entered pursuant to Fed.R. of Civ. P. 54(b).

## II. OPINION

Having carefully read Counts I and III of the complaint and Fantastic's brief in opposition to Pickwick's motion for summary judgment, we find that review of the lower court's grant of partial summary judgment requires resolution of three questions. First, was the language in the licensing agreement, requiring affixation of notice of Fantastic's copyright ownership, properly interpreted by the district court as being merely a covenant independent of the other obligations in the contract? Second, under the 1909 Copyright Act, is there an implied condition to the parties' licensing agreement making authorized distribution of Fantastic's copyrighted material dependent upon *effective* notice of copyright? Third, if either an expressed or implied condition to the licensing agreement exists, was it breached by Pickwick's negligent designation of itself as copyright owner in the affixed copyright notice?

A. *Relationship Between Georgia Rules of Construction and Federal Copyright Law.*

Important to the proper resolution of these questions is an understanding of the extent to which Georgia law applies versus the scope of application and influence of the provisions and policies of the 1909 and 1976 Copyright Acts. Although the parties stipulated in the licensing agreement that Georgia law would govern the construction and enforcement of their con-

tractual obligations, this does not mean that all rights and obligations created by the copyright acts are superseded by Georgia law. In *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 229, 84 S.Ct. 784, 787, 11 L.Ed.2d 661 (1964), the Court stated that federal patent and copyright law "like other laws of the United States enacted pursuant to constitutional authority, are the supreme law of the land . . . . When state law touches upon the area of these federal statutes, it is 'familiar doctrine' that the federal policy 'may not be set at naught, or its benefits denied' by the state law." [citations omitted]. Under the 1976 Copyright Act, 17 U.S.C. § 101 *et seq.*, the scope of federal copyright protection was expanded and its preemptive nature codified. 17 U.S.C. § 301. A choice of law provision, therefore, merely designates the state whose law is to be applied to the extent its use is not preempted by nor contrary to the policies of the 1909 and 1976 Copyright Acts.

■ The only state "laws" applied by the court below were Georgia rules of contract construction. While the context of copyright law in which the agreement exists cannot be overlooked, application of Georgia rules to determine parties' contractual intent is not preempted by either copyright act nor does their application violate federal copyright policy. *See Bartsch v. Metro-Goldwyn-Mayer, Inc.*, 391 F.2d 150, 153 (2d Cir.), *cert. denied*, 393 U.S. 826, 89 S.Ct. 86, 21 L.Ed.2d 96 (1968); *Kingsrow Enterprises, Inc. v. Metromedia, Inc.*, 397 F.Supp. 879, 881 (S.D.N.Y.1975). *Cf. Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 99 S.Ct. 1096, 59 L.Ed.2d 296 (1979) (state law is not displaced merely because contract relates to intellectual property).[2] It is possible to hypothesize situations where application of particular state rules of construction would so alter rights granted by the

copyright statutes as to invade the scope of copyright law or violate its policies. We need not, however, set forth these extreme situations for it is clear that the application of Georgia rules of construction in the case at bar is not one of them.

Georgia law is not controlling of the second and third questions delineated above. Defendant did not argue to the court below, and the court did not *sua sponte* decide, whether under Georgia rules of construction the mere inclusion of a covenant setting forth the form of the correct copyright notice negated any implied conditions. We seriously doubt that Georgia rules of contract construction would have required this conclusion had the issue been raised. Additionally, such an interpretation would have made conflict between the application of state law and the 1909 Copyright Act a much more immediate concern.

**B.  Contract Interpretation.**

■ Defendant, Pickwick, does not dispute that in section 2(b) of the licensing agreement it promised to place the notice of Fantastic's copyright as spelled out in the provision on each recording sold. The question emphasized by Pickwick and focused on by the trial court was whether conformance with section 2(b) was a condition of Fantastic's obligations under the licensing agreement or merely a covenant. Both parties agree that if a breach of a condition precedent is found then the authority to manufacture and distribute copyrighted material granted in the licensing agreement did not vest. In that case, Pickwick's actions in manufacturing records and tapes would be without the authority of the copyright owner and would render Pickwick liable for copyright infringement. *See National Comics Publications, Inc. v. Fawcett Publications, Inc.*, 191 F.2d 594 (2d Cir. 1951); 3 *Nimmer on Copyright* § 10.15. A mere breach of covenant may support a claim of

---

**2.** In *Bartsch*, the Second Circuit was required to determine the scope of rights granted by a copyright owner under an assignment contract. A provision in the agreement provided that "[e]ach and every term of this agreement shall be construed in accordance with the laws of the United States of America and of the State of

New York." 391 F.2d at 153. The court, holding that New York law governed the question of interpretation in issue, noted that a " 'federal common law' of contracts is justified only when required by a distinctive national policy . . . . " *Id.*

damages for breach of contract but will not disturb the remaining rights and obligations under the license including the authority to use the copyrighted material. *See generally* 3A *Corbin on Contracts* §§ 633, 635 (1960).

■ We agree with the district court's finding that "[t]he application of the pertinent rules of construction under Georgia law leads to the conclusion that section 2(b) of the licensing agreement sets forth a covenant of performance rather than a condition precedent to the license granted to defendant." Record at 255. The court below cited three general rules of contract construction under Georgia law to support this finding: promises in a contract should be construed as covenants rather than conditions if the text permits, Ga.Code Ann. § 37–216; *Floyd v. Hoover*, 141 Ga.App. 588, 590, 234 S.E.2d 89 (1977); terms of an agreement should be interpreted to avoid a forfeiture of contract benefits, *see Kitchens v. Atlantic Steel Co.*, 123 Ga.App. 812, 815–16, 182 S.E.2d 530 (1971), *aff'd*, 228 Ga. 708, 187 S.E.2d 268 (1972); and finally, all doubt as to the intended meaning of a contract should be resolved against the party who drafted it. *See Chalkley v. Ward*, 119 Ga. App. 227, 230, 166 S.E.2d 748 (1969); *Farm Supply Co. of Albany, Inc. v. Cook*, 116 Ga.App. 814, 818–19, 159 S.E.2d 128 (1967). Applying these principles, we note that section 2(b) does not contain any express words of condition. The phrases "subject to" and "in accordance with", which are used in the agreement, are ambiguous. Additionally, as the district judge noted, "[o]f the four requirements set forth in section 2, only two impose any obligation of performance upon defendant; the remaining provisions, sections 2(c) and 2(d), are covenants by plaintiff Fantastic. . . . [I]t is unlikely that

section 2, when read in its entirety, attempts to impose conditions solely upon defendant." Record at 256.

■ **C.** *Implied Condition of Adequate Notice Under the 1909 Copyright Act.*[3]

In Counts I and III of its complaint, Fantastic bases its claim of copyright infringement on the theory that "any distribution of sound recording by Defendant . . . which reflected that Defendant was the owner of the copyright, as a matter of law, constitutes a distribution and use that was unauthorized, just as if there were no agreement at all, . . . ." Consistent with the breath of argument these counts allow, plaintiff in its brief in opposition to Pickwick's motion for summary judgment contends (in a rather enigmatic fashion) that, if the express language of section 2(b) is not interpreted as a condition, then an implied condition must be found. In making the latter claim, Fantastic stresses "the nature of copyright law", the mutual intent of the parties that Fantastic maintain control of the copyright and not dedicate it to the public domain, and Pickwick's knowledge of Fantastic's copyright ownership. Record at 225.

While courts will not rewrite agreements, they are not as a general matter confined to the terms which have been put to paper in their efforts to effectuate the intent of the parties.

The fact that a contract has been put into express words does not prevent the meaning and legal operation of those words from being affected by their factual environment. Where indispensible to effectuate the intent of the parties, a contract may be implemented beyond its express language; courts have the power

---

**3.** Congress under the 1976 Copyright Act has eliminated consideration of implied conditions of adequate notice as to publications occurring after January 1, 1978, by providing that an omission of or error in copyright notice will not invalidate the copyright if "the notice has been omitted in violation of an express requirement in writing that, as a condition of the copyright owner's authorization of the public distribution of copies or phonorecords, they bear the pre-

scribed notice." 17 U.S.C. §§ 405(a)(3), 406(a); H.R.Rep. No. 94–1476, 94th Cong., 2d Sess., *reprinted in* [1976] U.S.Code Cong. & Ad.News 5659, 5765. The logical inference from this requirement is that an implied condition, or even an express condition if not in writing, will not preserve a copyright against the effects of publication without notice or publication with inadequate notice.

to inquire into the real purpose of the agreement; language, though seemingly plain and clear, will not bear a literal interpretation if this leads to an absurd result or thwarts the manifest intention of the parties.

4 *Williston on Contracts* § 610B (3rd ed).

Plaintiff cites two cases, arising in the copyright context, that strongly support a finding of an implied condition in the case at bar. In *County of Ventura v. Blackburn*, 362 F.2d 515 (9th Cir. 1976), plaintiff had entered into a licensing agreement with defendant permitting it as a licensee to reproduce a copyrighted map. Defendant failed to affix any notice of copyright to the material reproduced under the license, and plaintiff brought suit for copyright infringement. The district court held and the Ninth Circuit affirmed that "the conduct of the [defendant] in selling or using copies of the maps without the copyright notices affixed constituted an infringement of the copyright." 362 F.2d at 520. The court reached this conclusion although the licensing agreement did not expressly require that copyright notices be affixed because it found that "[no] right was granted the [defendant] to use or sell any map other than duplicates from the photograph negatives [which all had affixed copyright notices]." *Id.* The court, therefore, implied a condition based on the fact that the 1909 Copyright Act created exclusive rights of ownership in plaintiff that were not divested or assigned to defendant in the licensing agreement.

The second case relied upon by Fantastic, *National Comics Publications v. Fawcett Publications*, 191 F.2d 594 (2d Cir. 1951), involved a suit against a company that, without any claim of authority, had reproduced plaintiff's copyrighted material. Defendant asserted as a defense to the in-

fringement action that the plagiarized material had previously been reproduced by a licensee of plaintiff without containing any copyright notice and that this omission resulted in a forfeiture of the copyright. Remanding the case for further factual determinations the Second Circuit held that:

> If [the copyright owner] gave [its licensee] a license to publish the "strips," their publication without the "required" notice was "by authority of the copyright proprietor," and had the same effect upon the copyrights that similar publication by [the licensor] would have had: it "forfeited" them unless § 21 saved them. On the other hand if [the licensee] promised to affix the "required" notice upon the borrowed "strips" ... the performance of that contract was a condition upon the license, for [the licensor] certainly did not mean to be remitted only to the inadequate remedy of an action for damages for breach of the promise.

*Id.* at 600.

Both *Ventura* and *Fawcett* rely on a premise that, in regard to licensing agreements made prior to 1978, those rights not transferred to the licensee are retained by the copyright proprietor. *See also Manners v. Morosco*, 252 U.S. 317, 40 S.Ct. 335, 64 L.Ed. 590 (1920). At the same time, however, a licensee is viewed as the licensor's agent. *See First American Artificial Flowers, Inc. v. Markovits, Inc.*, 342 F.Supp. 178 (S.D.N.Y.1972); 2 *Nimmer on Copyright* § 7.03. The copyright owner is deemed responsible for the negligent omissions of the licensee unless the distribution was without the authority of the licensor.[4] The potentially conflicting results indicated by these statements have been avoided by finding an implied condition to the licensing agreement requiring the licensee to take

---

**4.** Pickwick argues that the *error* in copyright notice was without the authority of Fantastic, and Fantastic's copyright is therefore not jeopardized regardless of whether a condition of adequate notice is found. Pickwick fails to appreciate the distinction between the distribution of copyrighted material under a license and authorization of an error in copyright notice. Only where the *distribution* of copyright-

ed material is unauthorized, will the copyright owner be protected from errors and omissions in the affixed copyright notice. *Compare* 17 U.S.C. §§ 401(a), 402(a) *with* 17 U.S.C. § 405(a)(3); *see also Greeff Fabrics, Inc. v. Malden Mills Industry*, 412 F.Supp. 160 (S.D.N.Y.1976); *Judscott Handprints, Ltd. v. Washington Wall Paper Co.*, 377 F.Supp. 1372 (E.D.N.Y.1974).

actions to protect the rights retained by the licensor.[5] Therefore, when the licensor has not manifested an intent to dedicate his copyright to the public domain,[6] yet the licensee has failed to affix notice adequate to protect the licensor's copyright, the courts have consistently found that the licensee was acting without authority of the licensor in distributing the copyrighted material. *See, e. g., Judscott Handprints, Ltd. v. Washington Wall Paper Company, Inc.,* 377 F.Supp. 1372 (E.D.N.Y.1974); *National Council of Young Israel, Inc. v. Feit Company, Inc.,* 347 F.Supp. 1293 (S.D.N.Y.1972); *see also H. M. Kolbe Co. v. Armgus Textile Co.,* 315 F.2d 70, 73–75 (2d Cir. 1963); *Greeff Fabrics, Inc. v. Malden Mills Industries, Inc.,* 412 F.Supp. 160 (S.D.N.Y.1976), *aff'd,* 556 F.2d 556 (2d Cir. 1979.)

We are not able to conclude from the district court's written findings whether it fully considered plaintiff's argument for the existence of an implied condition precedent. We also entertain some doubt as to whether, because of the factual nature of the inquiry, we can resolve this issue on appeal. We do not, however, find it necessary to remand this case to the district court for further factual determinations, as our resolution of the third and final question before us renders further court action on the preceding issue unnecessary.

**D.** *Breach of Condition of Adequate Notice.*

As compared to section 2(b), which requires affixation of a particular copyright notice, any condition that may be implied to the parties' agreement requires only the presence of *adequate* notice—i. e. notice sufficient to prevent the forfeiture of Fantastic's copyright. We must, therefore, decide whether under the facts of the instant case a licensee's mistaken designation of itself as copyright proprietor would render the copyright notice ineffective to preserve the validity of the licensor's copyright.[7]

This question is clearly answered in section 406(a) of the 1976 Copyright Act, 17 U.S.C. § 406(a) (1978), which provides in part: "Where the person named in the copyright notice on copies of phonographs publicly distributed *by authority of* the copyright owner is not the owner of the copyright, the validity and ownership of the copyright are not affected." [emphasis added]. An error in name in publications made prior to January 1, 1978, will not, however, be excused under section 406(a) since the present Act was not yet in effect. The provisions of the 1909 Act and accompanying case law are controlling as to the breach of any implied condition in the instant case.

The 1909 Copyright Act does not contain any provision comparable to section 406(a)

**5.** The Supreme Court has also found an implied covenant in interpreting a copyright licensing agreement. In *Manners v. Morosco,* 252 U.S. 317, 40 S.Ct. 335, 64 L.Ed. 590 (1920), the Court found an implied negative covenant on the part of a copyright licensor not to use the ungranted portion of the copyright to the detriment of the licensee's interest under the licensing agreement.

**6.** A copyright can only be abandoned through some overt act which indicates the copyright proprietor's desire to surrender its rights. *Hampton v. Paramount Pictures Corp.,* 279 F.2d 100 (2d Cir. 1960); *Metro-Goldwyn-Mayer, Inc., v. Showcase Atlanta Cooperative Products, Inc.,* 479 F.Supp. 351 (N.D.Ga.1979). A forfeiture may, however, occur regardless of the copyright owner's intent to preserve the copyright. A forfeiture is imposed "invitium because of [the copyright proprietor's] failure to comply with the prescribed formalities."

*National Comics Publications v. Fawcett Publications,* 191 F.2d 594 (2d Cir. 1951).

**7.** Resolution of this question is not encompassed by the admonition that federal courts are not empowered to issue advisory opinions. *FCC v. Pacifica Foundation,* 438 U.S. 726, 98 S.Ct. 3026, 57 L.Ed.2d 1073 (1978). The question of whether Pickwick's negligent omission could result in forfeiture of Fantastic's copyright is "precisely framed and necessary for [our] decision...." *United States v. Fruehauf,* 365 U.S. 146, 157, 81 S.Ct. 547, 553, 5 L.Ed.2d 476 (1961). Additionally, the parties to this action clearly have taken adversarial positions in arguing this question, although Fantastic has been required to make claims that would usually be antithetical to its status as copyright proprietor. *See also County of Ventura v. Blackburn,* 362 F.2d 515 (9th Cir. 1976) (court held that implied condition was breached by failure of licensee to affix any notice).

of the current Act.[8] The "form of notice" requirements set forth in section 19 of the old Act, ch. 320, § 19, 35 Stat. 1075,[9] were intended "to inform the public of the existence of the copyright, the time of commencement, and by whom it is claimed; and to prevent innocent persons who are unaware of the existence of the copyright from suffering by making use of the material." *Harry Alter Co. v. Graves Refrigeration, Inc.*, 101 F.Supp. 703, 705 (N.D.Ga. 1951). As to the requirement that notice include "the name of the copyright proprietor," courts have generally avoided technical forfeitures for failure to strictly comply with the provision, focusing instead on whether the purpose of the notice requirement was served despite the defect in the notice provided. *See, e. g., Goodis v. United Artist Television, Inc.*, 425 F.2d 397 (2d Cir. 1970); *Tennessee Fabricating Co. v. Moultrie Manufacturing Co.*, 421 F.2d 279 (5th Cir. 1970); *Uneeda Doll Co. v. Goldfarb Novelty Co.*, 373 F.2d 851 (2d Cir. 1967); *Gelles-Widmer Co. v. Milton Bradley Co.*, 313 F.2d 143, 147 (7th Cir. 1963).

In *Tennessee Fabricating Co.*, this court specifically rejected a literal application of section 19 stating that "it is not necessary that the owner's true name be used at all so long as a name with which it is identified is used and no innocent persons are misled." 421 F.2d at 283. Similarly, the Seventh Circuit has excused the use of a subsidiary's name when the parent corporation was the actual copyright proprietor and "the interests of the two corporations were precisely the same. . . ." 313 F.2d at 147. Finally, the Second Circuit in *Goodis*, after noting the liberalizing nature of the then proposed new copyright law, held that "where a magazine has purchased the right of first publication under circumstances which show that the author has no intention to donate his work to the public, copyright notice in the magazine's name is sufficient to obtain a valid copyright on behalf of the beneficial owner, the author or proprietor." 425 F.2d at 399.

■ Extending the principles recognized in these cases, and in view of section 406(a) of the 1976 Copyright Act, we hold that under the facts of the case at bar Pickwick's designation in the copyright notice of itself as copyright proprietor did not render the notice inadequate to protect Fantastic's copyright ownership—i. e. the defect did not result in the breach of an implied condition of adequate notice. The claim of copyright placed on Fantastic's material, although defective, clearly notified the public of the existence of a claim of copyright. Further, the record demonstrates that while the relationship between Pickwick and Fantastic is technically merely that of a licensor and licensee, the practical association between the parties renders de minimus any possibility that third parties will be misled. Pickwick is not claiming a copyright interest in the material covered by the licensing agreement, and is clearly aware of Fantastic's copyright proprietorship. Fantastic has been unable to show any instance where someone has been misled into licensing Fantastic's material from Pickwick. In fact, the record reveals that all the inquiries made to Pickwick concerning the material have been referred to Fantastic. Finally, Pickwick has agreed to make additional efforts to prevent any future confusion, including correcting the defective notice on any phonorecordings still in its inventory.

8. The only provision under the 1909 Copyright Act addressing the question of either defective or omitted copyright notice is section 21. Ch. 320, § 21, 35 Stat. 1075. That provision only addresses the situation where there has been a total omission of notice from "a particular copy or copies." The situation contemplated by section 21 arises when, through a manufacturing error, a small percentage of goods are published without copyright notice.

9. Section 19 of the 1909 Copyright Act provides in part:

Notice; Form—The notice of copyright required by section 10 of this title shall consist either of the word "Copyright", the abbreviation "Copr.", or the symbol ©, accompanied by the name of the copyright proprietor, and if the work be a printed literary, musical, or dramatic work, the notice shall include also the year in which the copyright was secured by publication.

## III. CONCLUSION

In accordance with the foregoing discussion, we affirm the district court's dismissal of Counts I and III in the instant action.

AFFIRMED.

---

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.