# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 18, 2010

No. 09-10726

Lyle W. Cayce
Clerk

THE COMPLIANCE SOURCE, INC.; DIGITAL DOCS, INC.,

> Plaintiffs-Cross Defendants–
> Appellants-Cross Appellees

v.

GREENPOINT MORTGAGE FUNDING, INC.,

> Defendant-Cross Plaintiff–
> Appellee-Cross-Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before JONES, Chief Judge, PRADO, Circuit Judge, and OZERDEN[*], District
Judge.

PRADO, Circuit Judge:

The Compliance Source, Inc. and Digital Docs, Inc. (collectively,
"Plaintiffs") appeal the district court's grant of summary judgment in favor of
GreenPoint Mortgage Funding, Inc. ("GreenPoint") on Plaintiffs' claim that
GreenPoint breached a licensing agreement between the parties. Plaintiffs
licensed form-database technology to GreenPoint, and GreenPoint allowed its

---

[*] District Judge of the Southern District of Mississippi, sitting by designation.

No. 09-10726

attorneys, McGlinchey Stafford and Youngblood & Bendalin LLP ("MSYB"), to access and use the technology to prepare loans for GreenPoint. Plaintiffs argue that the district court erred when it found that GreenPoint's provision of the technology to MSYB did not violate the licensing agreement because MSYB's use of the technology was "on behalf of and for the benefit of" GreenPoint.

In addition, GreenPoint cross-appeals the district court's grant of summary judgment in favor of Plaintiffs on GreenPoint's counterclaim that Plaintiffs breached a settlement agreement between the parties by pursuing claims other than the sole sublicensing claim left open by the settlement agreement.

Because the licensing agreement expressly prohibited any use of the licensed technology not explicitly permitted by the agreement itself, and because the agreement did not explicitly permit the type of input access that GreenPoint provided to MSYB, the district court erred by granting summary judgment to GreenPoint on Plaintiffs' claim for breach of the licensing agreement. Accordingly, we reverse and remand to the district court for consideration of GreenPoint's waiver and statute-of-limitations defenses. On GreenPoint's counterclaim, however, we affirm the district court's grant of summary judgment to Plaintiffs, because all of the claims Plaintiffs pursued after the settlement agreement were related to GreenPoint's provision of the licensed technology to MSYB.

No. 09-10726

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Background

Compliance Source develops, licenses, and sells mortgage-financing forms to residential lenders.  Digital Docs develops, licenses, and supports computer software that prepares residential-mortgage loan documents.  Plaintiffs jointly developed form-database technology that allows mortgagees to merge their own transaction-specific information with Plaintiffs' proprietary forms and prepare customized disclosures, mortgage-loan calculations, and loan documents.[1]

In 2002, GreenPoint, a mortgage-financing company, signed a licensing agreement with Plaintiffs to use the form-database technology to streamline its loan-packaging process.  Article III of the agreement granted the following licenses to GreenPoint:

> Section A.  **Grant of License for Use of Forms.**  In consideration for [GreenPoint]'s payment of the fees referred to herein, Compliance Source hereby grants to [GreenPoint], and [GreenPoint] accepts, a non-exclusive, annually renewable license to use Compliance Source's proprietary electronic files containing computer coded images of the Standard Forms, Modified Standard Forms and Custom Forms developed by Compliance Source and access to the Form Database described herein in strict accordance with the various terms and conditions of this Agreement. Compliance Source understands and agrees that [GreenPoint]'s Originating Lenders will have access to use the Closing Documents for loans which [GreenPoint] is purchasing and to Disclosure Documents and Closing Documents for loans closing in the name of [GreenPoint] through a customized link on [GreenPoint]'s website and hereby consents to this arrangement between [GreenPoint] and its Originating Lenders.  Except as specifically provided in this Agreement, [Plaintiffs] have not granted, and [GreenPoint] has not

---

[1] The technology at issue in this case is a combination of two copyrighted technologies: Compliance Source's Form Database and Digital Docs's Software Products.

No. 09-10726

received, a license or any other right to copy, make, use, have made, sell, support, or sub-license the Form Database, or any part thereof.

Section B. **Grant of License for Use of Software.** Digital Docs hereby grants to [GreenPoint] and [GreenPoint] hereby accepts from Digital Docs a non-transferable, non-exclusive license (the "Software License") to use the Software Products in a Production Environment at the Customer Site Locations, all in strict accordance with the various terms and conditions of this Agreement. Except as specifically provided in this Agreement, Digital Docs has not granted, and [GreenPoint] has not received, a license or any other right to copy, make, use, have made, sell, support, or sub-license the Software Products, or any part thereof. [GreenPoint] may only use the Software Products for itself. [GreenPoint] may not sub-license the Software Products to third parties.

In exchange, GreenPoint agreed to pay a transaction-based fee for each mortgage it financed using the technology. Article III of the agreement also expressly provided that the agreement did not convey or transfer any ownership interest in the technology to GreenPoint:

Section E. **No Ownership or Proprietary Interest Conveyed.** [GREENPOINT] HEREBY SPECIFICALLY ACKNOWLEDGES AND THE PARTIES AGREE: (i) THAT NO PROVISIONS OF THIS AGREEMENT SHALL BE CONSTRUED TO CONVEY OR TRANSFER ANY OWNERSHIP OR PROPRIETARY INTEREST IN ANY STANDARD FORMS, COMPUTER SOFTWARE OR RELATED INTELLECTUAL PROPERTY WHICH IS OR MAY BE SUBJECT TO THIS AGREEMENT, (ii) THAT ALL SUCH OWNERSHIP AND PROPRIETARY INTEREST IS AND SHALL REMAIN THE SOLE PROPERTY OF [PLAINTIFFS]; (iii) THAT [GREENPOINT] WILL NOT ATTEMPT TO REVERSE COMPILE OR REVERSE ENGINEER THE SOFTWARE PRODUCTS, FORM DATABASE OR DOCUMENT ENGINE; AND THAT [GREENPOINT] WILL TAKE ALL STEPS NECESSARY TO PREVENT ANY THIRD PARTY WITH WHICH IT MAY DO BUSINESS FROM TIME TO TIME FROM DOING THE ACTS

4

No. 09-10726

PREVIOUSLY MENTIONED IN THIS PARAGRAPH OR FROM OTHERWISE ACTING IN ANY WAY THAT IS INCONSISTENT WITH [GREENPOINT]'S OBLIGATIONS UNDER THIS AGREEMENT.

The agreement restricted third-party access to and use of the licensed technology in four other provisions outside of Article III:

1.   Article IV, Section A(3): "The use of the Standard Forms does not imply or grant permission to reproduce or alter them in any manner not expressly stated in this Agreement."

2.   Article IV, Section A(4): "Except as permitted hereunder with respect to Originating Lenders, [GreenPoint] will not use the Standard Forms in competition with Compliance Source."

3.   Article XIII, Section A: "Neither party may resign, assign or pledge its rights or delegate its duties under this Agreement without the other party's prior written consent . . . ."

4.   Article XIII, Section J: "Except as expressly provided herein, nothing in this Agreement is intended to confer any right, remedy, obligation or liability upon any person or entity other than the parties hereto and their respective successors and permitted assigns."

The agreement contained two provisions that expressly granted access to the licensed technology to a party other than GreenPoint. First, Article III, Section A granted "Originating Lenders" limited access to certain closing documents and disclosures through a customized link on GreenPoint's Web site for loans purchased by GreenPoint or for loans closing in GreenPoint's name. Second, Article VI, Section A provided that Plaintiffs' general counsel, PeirsonPatterson, LLP, "in conjunction with local counsel where appropriate," would perform "preparation" or "review" services if necessary to comply with various states' laws that require licensed attorneys to prepare or review loan

5

documents.[2]

GreenPoint installed the form-database technology on July 6, 2003. It immediately granted MSYB access to the technology so that MSYB could produce loan packages for GreenPoint loans. Soon after, Chris Peirson, one of the principals of Plaintiffs, expressed her concerns to Charles Pignuolo, counsel to Plaintiffs, about MSYB's level of access to the technology. Later that month, James Manion, GreenPoint's then-general counsel,[3] sent an e-mail to Peirson, informing her that GreenPoint was paying $150 per loan to Akin Gump[4] to pull the loan documents off of the form-database system, check the loan package to the approval screens, and send the loan to closing. On August 15, Pignuolo sent a letter to Peirson, which stated that it had come to his attention that one of GreenPoint's third-party vendors[5] had direct access to the technology. Pignuolo set up a meeting at GreenPoint to discuss the issue. At the meeting, which took place on August 20, GreenPoint assured Plaintiffs that MSYB merely had view-only access, which Plaintiffs found acceptable under the agreement.

Two months later, Plaintiffs received an e-mail from an MSYB employee about a problem with printing a form. As a result, on October 2, Peirson sent an e-mail to Manion asking for reassurances that GreenPoint's representations at the August 20 meeting about MSYB's level of access to the technology were correct. Manion responded that GreenPoint had represented itself truthfully at

---

[2] GreenPoint never availed itself of PeirsonPatterson's services.

[3] Manion left GreenPoint and began working for Plaintiffs in December 2003.

[4] Manion was referring to MSYB, which was formed by a group of former Akin Gump attorneys.

[5] Peirson later testified that the third-party vendor was MSYB.

the meeting and that MSYB's level of access to the technology had not changed since then.  Peirson responded the next day, emphasizing the importance of the technology to Plaintiffs and stressing that allowing a third party to have access to the technology could threaten Plaintiffs' position in the market.  Plaintiffs apparently dropped the issue after this communication.  In 2006, GreenPoint terminated the license agreement.

## B.    Procedural Background

Plaintiffs filed this lawsuit on June 14, 2006.  Initially, Plaintiffs brought several claims against GreenPoint that were unrelated to GreenPoint's provision of the licensed technology to MSYB.[6]  On August 29, 2007, GreenPoint's Rule 30(b)(6) representative, Kim Koreen, testified that GreenPoint had allowed MSYB to enter data and print documents using the technology.  The following day, another GreenPoint Rule 30(b)(6) representative, Leslie Gibin, testified that although she was not familiar with MSYB's level of access to the technology, she did not believe MSYB had access to change code.  On November 14, MSYB's Rule 30(b)(6) representative, Ronald Bendalin, testified that MSYB had input access to the technology.  Plaintiffs assert that this was the first time they had learned of the extent of MSYB's access to the technology, and they moved to file their Third Amended Complaint, which alleged that GreenPoint had impermissibly sublicensed the technology to MSYB and provided MSYB with unauthorized access to the technology in violation of the licensing agreement.

While Plaintiffs' motion to amend their complaint was pending, the parties reached a partial settlement, whereby Plaintiffs agreed to release all of their claims against GreenPoint except for the so-called "Sublicensing Claim."  The

---

[6] None of those claims are at issue here.

agreed stipulation of dismissal, filed pursuant to the settlement agreement, defined the Sublicensing Claim by reference to certain portions of the pending Third Amended Complaint: "paragraphs 52–55 thereof together with the specifically related allegations in paragraphs 84–86, 87(k), and 88 (Count I), Count VI (limited to breach of contract), and the associated requests for relief to the extent recoverable at law or at equity in connection with unauthorized sublicensing . . . ."

In its briefs, GreenPoint asserted that the settlement agreement left open only a very narrow Sublicensing Claim involving GreenPoint's unauthorized transfer or sublicense of the technology to MSYB. At oral argument, however, GreenPoint's counsel conceded that the settlement agreement left open the broader claim that GreenPoint had provided MSYB with unauthorized access to the technology.

The district court dismissed the released claims, and the magistrate judge assigned to the case granted the motion to amend the complaint, finding that Plaintiffs' failure to amend before the deadline to do so was excusable because they had had no reason to suspect MSYB had anything more than view-only access until after the deadline. Plaintiffs then filed their Third Amended Complaint. In response, Greenpoint filed a counterclaim against Plaintiffs, claiming that Plaintiffs had breached the settlement agreement by adding claims to the Third Amended Complaint that had been already settled and dismissed. Specifically, GreenPoint pointed to paragraphs 58(c), (d), and (e) of the Third Amended Complaint.

Greenpoint moved for summary judgment on Plaintiffs' claim for breach of the licensing agreement and its counterclaim for breach of the settlement

agreement.[7]  The district court granted summary judgment to GreenPoint on Plaintiffs' claim for breach of the licensing agreement, relying on *Geoscan, Inc. of Texas v. Geotrace Technologies, Inc.*, 226 F.3d 387 (5th Cir. 2000), and *Hogan Systems, Inc. v. Cybresource International, Inc.*, 158 F.3d 319 (5th Cir. 1998), for the proposition that the use of licensed property by a third party solely on behalf of and for the benefit of the licensee is not a transfer or sublicense of that property.  *See Compliance Source, Inc. v. GreenPoint Mortg. Funding, Inc.*, No. 3:06-CV-1057-L, 2009 WL 1650021, at *5 (N.D. Tex. June 11, 2009).  The district court found that because MSYB had "used the [licensed technology] only on behalf of GreenPoint," GreenPoint was entitled to summary judgment.  *Id.*

On the counterclaim, the district court denied GreenPoint's motion for summary judgment and *sua sponte* awarded summary judgment to Plaintiffs. The district court found that paragraph 58 of the Third Amended Complaint contained prefatory language that limited the Sublicensing Claim to violations of the licensing agreement "by and through Defendant's provision of Plaintiffs' IP to MS[BY]."  Thus, the district court rejected GreenPoint's argument that paragraphs 58(c), (d), and (e) of the Third Amended Complaint resurrected claims that had been released by the settlement agreement.

Plaintiffs appeal the grant of summary judgment on its claim for breach of the licensing agreement, and GreenPoint cross-appeals the grant of summary judgment on its counterclaim for breach of the settlement agreement.

---

[7] Plaintiffs also moved for summary judgment on Greenpoint's Rule 11 counterclaim, which is not at issue on appeal.

No. 09-10726

## II.  STANDARD OF REVIEW

We review an order granting summary judgment *de novo*, applying the same standard as the district court.  *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 377 (5th Cir. 2010).  "We view the evidence in the light most favorable to the non-moving party and avoid credibility determinations and weighing of the evidence."  *Id.* (citation omitted).  We will uphold a grant of summary judgment where "the competent summary judgment evidence demonstrates that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."  *Id.* (citation omitted).  "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant."  *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## III.  ANALYSIS

### A.    Breach of the Licensing Agreement

Plaintiffs argue that the district court erred when it granted summary judgment to GreenPoint on the claim for breach of the licensing agreement.  They contend that the licensing agreement expressly prohibited any use of the licensed technology that was not explicitly authorized by the agreement itself, and that nothing in the agreement explicitly authorized GreenPoint to give MSYB input access to the technology.  GreenPoint responds that MSYB was an independent contractor or agent that could take only those actions with respect to the licensed technology that GreenPoint could take itself, and that nothing in the agreement prohibited such use when it was done exclusively for the benefit of or on behalf of GreenPoint.  GreenPoint also argues that the two provisions of the agreement that expressly granted third-party access to "Originating Lenders" and PeirsonPatterson contemplate the type of input access that

10

No. 09-10726

GreenPoint granted to MSYB.[8]

Because this is a diversity case, we apply Texas substantive law.[9] *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009). "If no state court decisions control, we must make an '*Erie* guess' as to how the Texas Supreme Court would apply state law." *Id.* (citation omitted).

"In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument." *J.M. Davidson, Inc. v. Webster*, 128 S.W. 3d 223, 229 (Tex. 2003) (citations omitted). "To achieve this objective, we must examine and consider the entire writing in an effort to harmonize and give effect to all provisions of the contract so that none will be rendered meaningless." *Id.* (citation omitted). "No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *Id.* (citations omitted).

Given these rules of construction, we disagree with the district court that our decisions in *Geoscan* and *Hogan Systems* permit a court to look past the actual language of a licensing agreement and absolve a licensee who grants third-party access merely because that access is on behalf of, or inures to the benefit of, the licensee. Neither case stands for such an expansive proposition.

---

[8] GreenPoint also raises waiver and statute-of-limitations defenses to Plaintiffs' claim. The district court did not reach these defenses, and we decline to consider them for the first time on appeal.

[9] "Generally, licensing agreements, like other contracts, are interpreted under state law." *Womack+Hampton Architects, L.L.C. v. Metric Holdings Ltd. P'ship*, 102 F. App'x 374, 378 (5th Cir. 2004) (unpublished) (per curiam) (citing *Fantastic Fakes, Inc. v. Pickwick Int'l, Inc.*, 661 F.2d 479, 483 (5th Cir. Unit B 1981); *Kennedy v. Nat'l Juvenile Det. Assoc.*, 187 F.3d 690, 694 (7th Cir. 1999)). We adopt *Womack+Hampton*'s reasoning and apply Texas law to the licensing agreement in this case.

Rather, *Geoscan* and *Hogan Systems* involved the interpretation of licensing agreements that *explicitly* granted limited rights to licensees to provide general third-party access. *See Geoscan*, 226 F.3d at 392 (quoting from and relying on the language of the licensing agreement, which expressly allowed the use of the licensed technology by third parties if such use was "by and *on behalf of* Licensee" (emphasis in original)); *Hogan Systems*, 158 F.3d at 322 (quoting from and relying on the language of the licensing agreement, which provided that the licensee could not make the licensed software available to anyone "except . . . to other persons during the period such other persons are on [Licensee's] premises for purposes specifically relating to [Licensee's] authorized use of the licensed program").

The licensing agreement in this case is different. For one, the agreement here contains no provision that generally permits GreenPoint to grant third-party access, whether or not such access would be on behalf of or for the benefit of GreenPoint, and GreenPoint has not pointed to any provision that gives it that right. In fact, the agreement does exactly the opposite; it provides that it does not grant to GreenPoint any right to "copy, make, use, have made, sell, support, or sub-license" the licensed technology except as specifically provided. In addition, the agreement expressly prohibits transfer or sublicense of the technology; withholds from GreenPoint any ownership or proprietary interest in the technology; and restricts GreenPoint's ability to reproduce or alter the technology, use the technology in competition with Plaintiffs, assign its duties under the agreement to a third party, or confer any right under the agreement upon a third party. Moreover, the agreement imposes upon GreenPoint the duty to "take all steps necessary to prevent any third party with which it may do

No. 09-10726

business from time to time from . . . acting in any way that is inconsistent with GreenPoint's obligations" under the agreement.

Because the licensing agreement in this case withholds rights not expressly given, *Geoscan* and *Hogan Systems* are of limited relevance, and we therefore decline to interpret the agreement to allow general third-party access on behalf of or for the benefit of GreenPoint.

The two provisions that grant third-party access to "Originating Lenders" (Article III, Section A) and PeirsonPatterson (Article IV, Section A) are consistent with our interpretation of the agreement. First, both provisions explicitly grant third-party access to specific parties, implying that as a general rule, the agreement does not permit third-party access. Second, both grants of access are limited in their scope: PeirsonPatterson's access is confined to only the preparation and review of loan packages in situations where state law requires a licensed attorney's services. Likewise, the Originating Lenders' access is restricted to certain closing documents and disclosure for GreenPoint loans through a customized link on GreenPoint's Web site. Neither provision grants input access to either party. To read into the agreement a general right to grant third-party access when such access would be on behalf of or for the benefit of GreenPoint would be to render these specific and limited grants of access superfluous.

The parties' intent in drafting the licensing agreement is clear from the face of the agreement. The evidence in the light most favorable to Plaintiffs establishes that GreenPoint gave MSYB input access. Even though MSYB's access to and use of the licensed technology may have been on behalf or for the benefit of GreenPoint, input access is not authorized by the agreement.

13

No. 09-10726

## B.    Breach of the Settlement Agreement

GreenPoint argues that the district court erred by awarding summary judgment to Plaintiffs on GreenPoint's counterclaim.  GreenPoint asserts that Plaintiffs breached the settlement agreement by adding already settled claims to the Third Amended Complaint.  Plaintiffs respond that the allegations in the Third Amended Complaint about which GreenPoint complains are "associated requests for relief," which were permitted by settlement agreement.

We affirm the district court's grant of summary judgment.  As the district court correctly noted, paragraph 58 of the Third Amended Complaint limited the Plaintiffs' allegations to violations of the licensing agreement "by and through Defendant's provision of Plaintiffs' IP to MS[BY]."  None of the allegations in paragraph 58 of the Third Amended, therefore, go beyond this limitation.  At oral argument, GreenPoint conceded that the settlement agreement left open the claim that GreenPoint breached the licensing agreement by providing MSYB with unauthorized access to the licensed technology.  Accordingly, we see no merit to GreenPoint's argument that the Third Amended Complaint added claims that were subject to the settlement agreement.

## IV.  CONCLUSION

According to the evidence upon summary judgment, GreenPoint allowed MSYB to access and use the licensed technology in a manner that was not permitted by the licensing agreement.  Therefore, we reverse the district court's grant of summary judgment to GreenPoint on Plaintiffs' claim for breach of the licensing agreement, and we remand to the district court for consideration of GreenPoint's waiver and statute-of-limitations defenses.

Plaintiffs' Third Amended Complaint did not raise any claims that were

14

No. 09-10726

settled under the settlement agreement. Therefore, we affirm the district court's award of summary judgment to Plaintiffs on GreenPoint's counterclaim for breach of the settlement agreement.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.