# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-50046

United States Court of Appeals
Fifth Circuit

**FILED**
April 9, 2018

Lyle W. Cayce
Clerk

ALEXANDER STROSS,

Plaintiff–Appellant Cross-Appellee,

v.

REDFIN CORPORATION,

Defendant–Appellee Cross-Appellant.

Appeals from the United States District Court
for the Western District of Texas
USDC No. 1:15-CV-223

Before STEWART, Chief Judge, and HAYNES and WILLETT, Circuit Judges.

PER CURIAM*:

The Copyright Act of 1976 arms a copyright holder with a statutory cause of action against anyone who displays, distributes, or publishes his copyrighted materials without permission. 17 U.S.C. § 501 (2002). In response to an accusation of copyright infringement, a party may raise as a shield the existence of a valid license to use the copyrighted materials. Because we conclude that the district court erred by conflating the copyright holder's

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-50046

statutory cause of action (arising under federal copyright law) with the downstream licensee's defense (interpreted under state contract law), we REVERSE the district court's order granting summary judgment and REMAND for further proceedings consistent with this opinion. We also DISMISS as moot Redfin's appeal of the portion of the order denying it attorney fees.

## I.     BACKGROUND

Alexander Stross is an Austin-based architectural photographer and real estate broker who regularly licenses his photographs to real estate agents for marketing use. Relevant to this case, Stross licensed a number of his photographs to the Austin/Central Texas Realty Information Service (ACTRIS), an Austin-area multiple listing service (MLS). MLS sites like ACTRIS compile active real estate listings into a database for use by area realtors and brokers in connection with the sale, lease, and valuation of real property.  The database allows realtors both to find properties for their clients and to share those properties via their own sites, ensuring real estate listings get the broadest possible exposure to online viewers.

Under the ACTRIS Rules, users who upload their listing data "license" the data to ACTRIS for use in accordance with the ACTRIS Rules. ACTRIS Rule 7.10 lays out the scope of this license:

> 7.10. Warranty and License to ACTRIS. By the act of submission of any Listing Content to ACTRIS or into the MLS Compilation, the Participant and/or Subscriber . . . thereby does grant, ACTRIS (and its service providers and licensees) an irrevocable, worldwide, paid up, royalty-free, right and license to include the Listing Content in the MLS Compilation, any statistical report or comparables, and to use, copy and create derivative works of it and authorize its use, copying and creation of derivative works for any purpose consistent with the facilitation of the sale, lease and valuation of real property or such other use; provided that with

2

respect to such other use, the Participant has not opted-out of such other use after notice of the same.

To download listings from ACTRIS, realtors and brokers must sign a sublicensing agreement: the Participant Content Access Agreement (PCAA). The PCAA incorporates the ACTRIS Rules, and provides a "non-exclusive, limited-term, revocable license," expressly subject to the Participant's compliance with the Rules.[1] The incorporated Rules ensure that Participants use ACTRIS data in accordance with ACTRIS's purpose, that is, "solely. . . in connection with the sale, lease and valuation of real property."

A few ACTRIS Rules are particularly relevant to this appeal. First, the "sold homes" restrictions in Rule 7.3 limit a Participant's use of previously sold home data to "support[ing] an estimate of value on a particular property for a particular client." The listing Participant may also use "sold" data about a specific property to advertise his or her own prior sales. The rule makes clear, however, that "[a]ny other use of 'sold' information, including, without limitation, importation of such information into a separate database or compilation, is unauthorized and prohibited." Next, Rule 7.5 imposes an obligation on ACTRIS Participants to control dissemination of the MLS content, and restricts them from using it for purposes other than those for which it is licensed. Finally, Rule 7.2 limits the use of ACTRIS content to the purposes provided for in the Rules and the PCAA, namely the sale, lease, and valuation of real property.

This case revolves around a PCAA signed by Redfin Corporation, an online real estate brokerage company that advertises itself as providing "full-

---

[1] Throughout litigation Stross has referred to Redfin primarily as a "Participant," because Redfin gained access to ACTRIS content by signing the PCAA, which refers to ACTRIS users as "Participants." But Redfin refers to itself primarily as a "licensee" based on the language in ACTRIS Rule 7.10 that it maintains provided a broad license to use Stross's photographs.

service, local agents who get to know you over coffee and on home tours," and "online tools to make you smarter and faster." REDFIN.COM. Redfin entered the Austin market in 2012, but maintains that it became an ACTRIS Participant in 2010. When Redfin became an ACTRIS Participant, it gained access to the MLS contents, including Stross's previously sold listings, and sold listings from other realtors to whom Stross had licensed his photographs directly.

In May 2013, Stross noticed several photographs from his sold listings posted on Redfin's website. After further digging he found that Redfin had displayed more than 1,800 of his copyrighted photographs in a manner he believed violated both the ACTRIS Rules and his copyrights. Specifically, Stross noticed that numerous sold listings were displayed for reasons other than to support an estimate on a particular property or advertise a particular realtor's prior sales. Stross also observed that Redfin encouraged its users to post his sold home photographs to social-media sites like Facebook and Pinterest through "share" buttons, and that it provided an online "Collections" album for users to save his photographs for "design ideas" and "fun"—separate from any anticipated real-estate transaction.

Based on these discoveries, Stross sued Redfin for copyright infringement under the Copyright Act, 17 U.S.C. § 501 (2002). He brought three claims: (1) direct copyright infringement—for copying, displaying, and distributing Stross's photographs on its website; (2) contributory copyright infringement—for knowingly encouraging third parties to "share" Stross's photographs to social media; and (3) false copyright management information[2]—for violating the Digital Millennium Copyright Act (DMCA) by

---

[2] Stross has not argued this claim on appeal and thus abandons it. *Geophysical Serv., Inc. v. TGS-NOPEC Geophysical Co.*, 850 F.3d 785, 792 (5th Cir. 2017) (quoting *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("An appellant abandons all issues not raised and argued in its initial brief on appeal.")).

attributing false "courtesy credits" to Stross. In his complaint, Stross alleged that rather than using his photographs of sold homes "to support an estimate of value on a particular property for a particular client," Redfin simply posted his photographs on its site to draw internet traffic. Stross also complained that real estate companies such as Redfin routinely leverage copyrighted photographs to attract customers, often without the authorization of the copyright owner.

Redfin moved for summary judgment on all three of Stross's claims, raising an affirmative defense of license. Redfin conceded that it had reproduced every photograph at issue, but argued that Stross had licensed the photographs to not only ACTRIS but also Redfin and other ACTRIS licensees via ACTRIS Rule 7.10. Redfin argued that because this license was "sufficiently broad" to cover its actual use of the photographs, it had not directly infringed Stross's copyrights. And since it had not directly infringed Stross's copyrights, it could not be held liable on a secondary basis for contributory copyright infringement or false copyright management information. Redfin also argued that the DMCA's safe harbor provisions shielded it from damages liability.[3] Stross filed a response and cross-motion for partial summary judgment, maintaining that he had not given Redfin the same broad license as he gave ACTRIS. Instead, Stross explained, Redfin had received a narrower sublicense from ACTRIS—the PCAA. Stross also alleged that Redfin had failed to prove it had any license before April 2012.

The district court denied both parties' motions. At the close of discovery, Redfin again moved for summary judgment on its defenses of license and safe harbor. And Stross again moved for partial summary judgment, alleging that

[3] The district court did not reach this defense, and we express no opinion as to its merits.

5

No. 17-50046

Redfin had exceeded the scope of its sublicense. The district court initially denied this second round of motions, holding that fact issues precluded summary judgment and that Stross presented a "strong case for infringement." But shortly thereafter, the district court withdrew its prior orders and granted Redfin's motion for summary judgment. The court did not base this decision on Redfin's argument that it received the same "broad license" as ACTRIS. Instead, it determined that Stross lacked standing to sue Redfin because he was not a party to the ACTRIS–Redfin PCAA. The court also held, however, that Redfin's licensed use of Stross's photographs shielded it from Stross's direct infringement allegations.

Following the district court's entry of final judgment, Stross filed a motion for reconsideration, and Redfin filed a motion requesting attorney fees. The district court denied both motions. Stross timely appealed, and Redfin cross-appealed on the denial of attorney fees.

## II.    DISCUSSION

"To prevail on a copyright infringement claim, a plaintiff must show (1) ownership of a valid copyright and (2) unauthorized copying." *Peel & Co., Inc. v. The Rug Mkt.*, 238 F.3d 391, 394 (5th Cir. 2001). The parties here do not dispute that Stross owns a valid copyright for these photos. Nor do they dispute that Redfin copied the photos. At issue is whether a license authorized Redfin to use the photos the way it did.

Enforcing a copyright license "raises issues that lie at the intersection of copyright and contract law." *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 939 (9th Cir. 2010), *as amended on denial of reh'g* (Feb. 17, 2011), *opinion amended and superseded on denial of reh'g*, No. 09-15932, 2011 WL 538748 (9th Cir. Feb. 17, 2011) (citation omitted). The district court here took a wrong turn, mistakenly focusing on whether Stross had *contractual* standing to bring his copyright claims. The court ultimately granted summary judgment

in Redfin's favor based on two conclusions: (1) Stross did not have standing to sue Redfin; and (2) Redfin's licensed use of Stross's photographs was a defense to the infringement claims. We consider each of these in turn.

Because this appeal comes to us from an order granting summary judgment, we review the district court's decision de novo. *Fairmont Cash Mgmt., L.L.C. v. James*, 858 F.3d 356, 360 (5th Cir. 2017) (citation omitted)). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party." *Wilson v. Tregre*, 787 F.3d 322, 325 (5th Cir. 2015) (citation omitted). Although a "mere 'metaphysical doubt' about material facts is insufficient to preclude a grant of summary judgment," *Thomas v. Great Atl. & Pac. Tea Co.*, 233 F.3d 326, 331 (5th Cir. 2000), a movant's burden to establish its right to summary judgment is heavy. *Stafford v. United States*, 611 F.2d 990, 993 (5th Cir. 1980).

**A. Stross's Copyright Claims**

First things first: This is a copyright case, not a contracts case. The right to bring a copyright infringement claim comes from federal copyright law, specifically the Copyright Act of 1976, 17 U.S.C. § 501(b). This right does not depend on state contract law. Whether Stross may sue (under federal law) for copyright infringement is a separate question from whether Redfin can prove (under state law) that it has a meritorious license defense. The district court conflated these inquiries, holding that Stross lacked "standing" to sue Redfin because he was neither a party to, nor a third-party beneficiary of, the ACTRIS–Redfin PCAA. Had Stross sued Redfin for *contractual* violations of the PCAA, this analysis would have been sound. But Stross did not bring

contractual claims and did not seek contractual remedies—he sued solely for copyright infringement.

Section 501(b) of the Copyright Act establishes who may sue for copyright infringement: "the legal or beneficial owner of an exclusive right under a copyright." 17 U.S.C. § 501(b). These exclusive rights include, among others, the right to display, distribute, and publish a copyrighted work. *Id.* § 106. Stross's copyright registrations are prima facie evidence that he is the legal owner of these exclusive rights. *See Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004) (per curiam). And Stross's claims implicate these rights—specifically, the display and distribution of his photographs. Simply put, because Stross fulfills the statutory requirements of the Copyright Act, he has a valid claim. He does not lose his right to bring this claim just because Redfin raises a downstream sublicense in its defense.

While "[c]ontracts . . . generally affect only their parties," a "copyright is a right against the world." *ProCD, Inc. v. Zeidenberg,* 86 F.3d 1447, 1454 (7th Cir. 1996). The two claims are distinct. That a license defense requires privity of contract has no bearing on a copyright holder's initial "right against the world." For this reason the district court erred by focusing primarily on whether Stross had contractual standing to sue Redfin, and we must reverse.

**B. Redfin's License Defense**

Because Redfin's license defense does not strip Stross of standing to sue under the Copyright Act, we must consider the merits of this defense. A license acts as a shield: As long as Redfin acts within the scope of its license, it remains safe from Stross's claims. But if Redfin acts outside the permitted scope of its license, it may be held liable for copyright infringement.

Stross challenges Redfin's license defense in two ways: (1) by arguing that Redfin cannot establish it had *any* license before April 2012; and (2) by alleging that Redfin exceeded the *scope* of its license. Although the district

court granted summary judgment primarily based on Stross's lack of standing to enforce the Redfin PCAA, it also noted that Stross did not create a genuine issue of material fact as to either the time period or scope of the license. *Stross v. Redfin Corp.*, 204 F.Supp.3d 915, 921 n.4, 923 (W.D. Tex. 2016). We disagree and conclude that Stross created a genuine issue of material fact as to both issues.

### 1. Stross Demonstrated a Genuine Issue of Material Fact as to Whether Redfin Had a License to Use His Photographs Before April 2012.

Because license to use a copyrighted work is an affirmative defense, Redfin, as the defendant, bears the burden of proving it had a valid license to use the photographs for the relevant time period. *See Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 499 (5th Cir. 2012). The disputed time period here spans about a year and a half. Redfin claims it has been an ACTRIS licensee since October 2010, but Stross alleges that Redfin did not become an ACTRIS Participant until April 2012—eighteen months after it began displaying Stross's photographs.

The record contains two pieces of relevant evidence, one supporting each party's version of the facts. Redfin relies primarily on an affidavit by Beth Gatlin, the Director of ACTRIS Member Services from October 1997 to June 2015. In her affidavit, Gatlin states that Redfin became an ACTRIS licensee in October 2010. As Stross points out, however, the only PCAA in the record conflicts with this testimony: It is signed and dated April 2012. Redfin shrugs in response, stating only that it must not have retained a copy of the "superseded PCAA." But it provides no further explanation as to why the only document in evidence indicates that its agreement with ACTRIS began in 2012 rather than 2010. And although Gatlin plainly states that Redfin became an ACTRIS licensee in 2010, her affidavit sheds no light on the mismatched dates nor on the lack of documentation supporting her statement.

There very well may be an explanation for the incongruity. But Redfin bears a heavy burden at the summary judgment stage—any doubt must be resolved in Stross's favor. *See Stafford v. United States*, 611 F.2d 990, 993 (5th Cir. 1980). When, as here, "the record before the court on the motion for summary judgment . . . contains conflicting evidence as to any material fact or as to the inferences to be drawn from basic facts, summary judgment should not be granted." *Id.*

Further, the credibility of an affiant is a fact issue that may preclude summary judgment. *See Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 81 (5th Cir. 1987). Given the absence of any explanation for the discrepancy between Gatlin's testimony and the date of the PCAA in the record, a reasonable juror could question Gatlin's credibility. And if the jury would be free to find against Redfin based on the evidence before the court, we cannot hold that the facts are undisputed. *See Stafford*, 611 F.2d at 993.

Because a genuine fact issue remains as to whether Redfin held a valid license to use Stross's photographs between October 2010 and April 2012, we reverse the district court's order granting summary judgment on this point.

### 2. Stross Demonstrated a Genuine Issue of Material Fact as to Whether Redfin Exceeded the Scope of its License to Use His Photographs.

The parties also dispute whether Redfin exceeded the scope of its license to use Stross's photographs. Much of this disagreement stems from their opposing views as to *which* license Redfin may raise in its defense. Stross argues that Redfin may raise only the PCAA—the license to which it is a party. But Redfin argues that it may raise the Stross–ACTRIS license under Rule 7.10, because when Stross gave ACTRIS a license to use his photographs, he simultaneously gave Redfin the same license.

In essence, Redfin's argument is that all ACTRIS users grant all other ACTRIS users a broad license to use their photographs simply by uploading

those photographs to the MLS. Redfin roots this argument in ACTRIS Rule 7.10, which grants "ACTRIS (and its service providers and licensees) an irrevocable, worldwide, paid-up, royalty-free, right and license" to use a Participant's content "for any purpose consistent with the facilitation of the sale, lease and valuation of real property." Redfin takes the phrase "and its service providers and licensees" to mean that it benefits directly from Rule 7.10 in the same way that ACTRIS does. Stross argues in turn that, rather than *automatically* transfer ACTRIS's rights to its licensees, this phrase merely empowers ACTRIS to sublicense the photographs.

Because "licensing agreements, like other contracts, are interpreted under state law," *Compliance Source v. GreenPoint Mortg. Funding, Inc.,* 624 F.3d 252, 259 n.9 (5th Cir. 2010) (citations omitted), we must look to Texas law to resolve this threshold dispute.[4] Under Texas law, "the benefits and burdens of a contract belong solely to the contracting parties." *First Bank v. Brumitt*, 519 S.W.3d 95, 102 (Tex. 2017). An exception to this foundational principle allows a third-party to enforce a contract if it can demonstrate that the contracting parties "intended to secure a benefit" to it. *Id.* But Texas law disfavors contract interpretations that imply a third-party beneficiary, requiring "a clear and unequivocal expression of the contracting parties' intent to directly benefit a third party." *Id.* at 103 (quoting *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011)). Implied intent is insufficient.

Although Redfin does not explicitly assert third-party-beneficiary status, its arguments betray a belief that Rule 7.10 is intended to secure a benefit not only to ACTRIS but also to Redfin. But Redfin cannot reap the benefit of the Stross–ACTRIS license by raising it as a defense unless Stross and ACTRIS "intended to secure a benefit" to it and provided "a clear and unequivocal

---

[4] The parties do not dispute that Texas law applies to any contractual issues.

expression" of this intent. *First Bank*, 519 S.W. at 102–03. That is not the case here. The language of Rule 7.10 does not amount to "a clear and unequivocal expression of the contracting parties' intent to directly benefit" Redfin, and any implied intent is insufficient. *Id.* at 102

What is more, Redfin's interpretation of Rule 7.10 myopically ignores the remainder of its sublicense. Texas law instructs that "[i]n construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument." *Moayedi v. Interstate 35/Chisam Rd., L.P.*, 438 S.W.3d 1, 7 (Tex. 2014) (quoting *J.M. Davidson v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003)). To achieve this objective, "courts must examine and consider the entire writing in an effort to harmonize and give effect to all of the provisions of the contract so that none will be rendered meaningless." *Moayedi*, 438 S.W.3d at 7 (quoting *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006) (emphasis removed)).

Reading Rule 7.10 in isolation to *automatically* transfer all of ACTRIS's rights to Redfin renders the PCAA—Redfin's sublicense from ACTRIS— meaningless. Although ACTRIS could have sublicensed Redfin up to as much as it received from Stross, the PCAA from ACTRIS to Redfin is undoubtedly narrower than the license from Stross to ACTRIS.[5] As Redfin's own affiant

---

[5] Redfin witness Beth Gatlin's description of ACTRIS's "two-part licensing structure" confirms this:

First, subscribers (both agents and brokers) who upload information into the ACTRIS database, grant to ACTRIS and its Licensees a broad license to use the uploaded content 'for any purpose consistent with the facilitation of the sale, lease and valuation of real property or other such use.' This grant is set forth in ACTRIS Rule 7.10. Once content is entered into the ACTRIS database it becomes part of the "MLS Compilation." ACTRIS owns the MLS Compilation.

Second, ACTRIS grants to its Participants who desire to display the MLS Compilation on their own websites a narrower license to use the MLS Compilation in accordance with the ACTRIS Rules and its Terms and

confirms, Redfin and other ACTRIS Participants gain access to MLS listings via the PCAA,[6] which expressly provides that Participants "may display the Licensed Content on a website available to the public *only to the extent permitted by the ACTRIS Policies*." (emphasis added).

And a number of these policies go beyond Rule 7.10's restrictions. For example, Rule 7.5 requires Participants to maintain control over and responsibility for each copy of any MLS content; Rule 7.3 instructs that Redfin may display data about "sold" properties only "to support an estimate of value on a particular property for a particular client"; and Rule 7.12 clarifies that the "License *from* ACTRIS" to its Participants is "a limited, non-exclusive, personal, revocable license, solely to use and copy the Compilation, subject to all of the limitations and restrictions set forth herein." This is a far cry from the "irrevocable, worldwide, paid-up, royalty-free, right and license" that Rule 7.10's "Warranty and License *to* ACTRIS" provides. With this in mind, a better reading of Rule 7.10 is that, along with acting as a direct license to ACTRIS, it also authorizes ACTRIS to sublicense Stross's listings to other users, but does not automatically do so.

Redfin also suggests on appeal that ACTRIS may be "the sole party with legal standing" to challenge the alleged misuse of the copyrighted photos because "Stross transferred to ACTRIS the right he now seeks to enforce." But this argument is unavailing. Only the legal or beneficial owner of an "exclusive

---

Conditions of Use. This grant is set forth in the ACTRIS Participant Content Access Agreement ("PCAA").

[6] The district court mistakenly referred to the two agreements as the "Stross PCAA" and the "Redfin PCAA." But Stross did not sign a PCAA; Stross's agreement with ACTRIS arises under Rule 7.10 as a result of uploading photographs to the ACTRIS database. Redfin's PCAA, by contrast, is a specific, outbound sublicensing agreement by which ACTRIS provides Participants a license to use its database in compliance with its Rules and Policies.

right" under a copyright may sue for a violation of that right. 17 U.S.C. § 201(d)(2). Section 101 of the Copyright Act "expressly excludes nonexclusive licenses." *Lulirama Ltd., Inc. v. Axcess Broad. Servs., Inc.*, 128 F.3d 872, 879 (5th Cir. 1997). A non-exclusive license is one "that gives the licensee a right to use [copyrighted materials] . . . on a shared basis with the licensor and possibly other licensees." *License*, BLACK'S LAW DICTIONARY (10th ed. 2014). That is the case here—Stross did not transfer to ACTRIS an exclusive right under the Copyright Act. Instead, he provided a non-exclusive license, bestowing the right to "use, copy, and create derivative works," but only "for any purpose consistent with the facilitation of the sale, lease and valuation of real property or such other uses." Because of this, Stross is the only party able to sue for copyright infringement.

To sum up, ACTRIS received certain rights from Stross via Rule 7.10, and passed along a portion of those rights to Redfin via the PCAA. ACTRIS could, of course, have sublicensed to Redfin the entirety of what it received from Stross. But the text of the PCAA indicates that the sublicense ACTRIS gave to Redfin was narrower than the license it originally received from Stross.[7] And in the absence of evidence that Redfin is an intended party or third-party beneficiary of Stross's initial license *to* ACTRIS, Redfin is limited to asserting in its defense the sublicense it received *from* ACTRIS: the PCAA. Whether Redfin exceeded the scope of the PCAA, however, remains an open question.

## C. Redfin's Cross-Appeal.

In its cross-appeal, Redfin contends that the district court erred by denying it attorney fees because the Copyright Act expressly provides for

---

[7] Therefore, we need not address Redfin's arguments about the meaning of "or other such use" in ACTRIS Rule 7.10.

No. 17-50046

prevailing defendants in copyright actions to recover their costs and fees. We need not address this argument, however, as it is mooted by our summary judgment reversal.

### III.   CONCLUSION

For the reasons discussed above, we REVERSE the district court's order granting summary judgment in Redfin's favor and REMAND for further proceedings consistent with this opinion. We also DISMISS as moot Redfin's appeal of the portion of the district court's order denying it attorney fees.